IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STACEY D. BRYANT,                    :

    Plaintiff,                   :

vs.                                  :        CA 10-0358-C

MICHAEL J. ASTRUE,                   :
Commissioner of Social Security,
                                     :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 13 & 14 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")) Upon consideration of the administrative record, plaintiff's brief, and the

Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

Plaintiff alleges disability due to degenerative disc disease, right carpal tunnel syndrome, and right ulnar neuropathy. The ALJ made the following relevant findings:

> **3. The claimant has the following severe impairments: degenerative disc disease, right carpal tunnel syndrome, and right ulnar neuropathy (20 CFR 404.1521 *et seq.* and 419.921 *et seq.*).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).**
>
> . . .

---

[1] The parties waived oral argument in this case. (*See* Docs. 21 & 22)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 13 & 14 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

I give substantial weight to the assessments of Dr. Luscher (Exhibit 5F), Dr. White (Exhibit 3F), Dr. Schnitzer (Exhibit 6F), Dr. Smith (Exhibit 7F), and Dr. Davis (Exhibit 11F), which reflect that the claimant has remained neurologically intact at all times and that diagnostic work-up demonstrates no significant abnormalities. Records from Dr. Luscher and Dr. Davis indicate that they expected the claimant to return to work without limitations. Their opinions are well supported by their own clinical examinations and testing, as discussed above, and are generally consistent with the record as a whole. I also consider Dr. Freij's records to be consistent with the balance of the medical evidence (Exhibits 19F and 23F). He reported antalgic gait due to back and leg pain on one clinic visit in July 2007; however, neither Dr. Freij nor any other physician has noted this finding on any other occasion. In any event, the objective medical evidence as a whole fails to establish the existence of any significant spinal impairment. The claimant may have chronic muscular back pain, as suggested by Dr. Smith. However, there is no reason to suppose that her symptoms would preclude light work.

I give little weight to the conclusions of Dr. Fleet (Exhibit 9F). The stated limitations are not supported by his own treatment notes, which reference only minor findings (Exhibit 8F). In his deposition testimony, he acknowledged that he was not aware that claimant had seen several other doctors who had released her from care without limitations (Exhibit 12F). He testified that it was possible to have spinal pathology which could be symptomatic without being evident on radiology studies. He further acknowledged that his positive clinical findings could have been subjective, but testified that "you don't really see too many people complain of that type pain" without having a problem. I find that this supposition does not account for the possible motive of secondary gain, especially in light of the claimant's pursuit of worker's compensation and disability benefits, and that it is a poor basis for determining permanent work-related limitations. Interestingly, at the deposition, Dr. Fleet characterized his questionnaire responses as

recommendations for limiting activity in order to avoid further symptoms. He specifically declined to characterize the limitations as a maximum residual functional capacity assessment, and stated that a determination about what kind of work the claimant could perform would require re-evaluation and a functional capacity evaluation. I therefore conclude that the limitations set forth in Dr. Fleet's residual functional capacity questionnaire are of dubious value and are unpersuasive.

I also give little weight to the conclusions of Dr. Barnes (Exhibit 25F). The claimant appears to have seen Dr. Barnes initially for the express purpose of getting disability forms completed (Exhibit 27F). He stated that her medical records suggested that any disability was "minimal," and he declined to complete the forms. The claimant returned for a second visit, and Dr. Barnes noted at that time that there were some degenerative changes on the new MRI scan. However, he apparently considered her spinal pathology to be minor, stating that its relation to the claimant's symptoms was "debatable." Indeed, the radiologist described the degenerative changes as "very mild" (Exhibit 26F). It is unclear why Dr. Barnes then proceeded to complete the clinical assessment of pain and physical capacities evaluation; possibly he felt that a treatment relationship now existed and that he could appropriately assist the claimant in this manner. Again, however, he did not report any objective clinical findings. Given the absence of any positive clinical findings and the minor nature of the abnormalities on the MRI scan, Dr. Barnes presumably based his form responses on the claimant's self-reported limitations. I therefore conclude that his responses are unsupported by the objective evidence and are not persuasive.

. . .

**6. The claimant is able to perform her past relevant work as a cashier and sewing machine operator (20 CFR 404.1565 and 416.965).**

The claimant has past relevant work as a cashier, cook, store laborer, and sewing machine operator. At the hearing, the vocational expert was asked to classify her past work by skill and exertional level. He responded that the claimant's experience as a cashier represented unskilled light work, that her experience as a cook represented skilled medium work, that her experience as a store laborer represented unskilled medium work, and that her experience as a sewing machine operator represented semi-skilled light work.

The vocational expert was then asked to consider the availability of any of the claimant's past work to a hypothetical individual of the claimant's age, education, and work experience, assuming limitation to light work. He responded that such limitations would allow performance of the claimant's past work as a cashier and sewing machine operator but would preclude the other jobs.

Accordingly, it is concluded that the claimant is able to perform her past relevant work as a cashier and sewing machine operator.

**7. The claimant was born on February 9, 1976 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

. . .

At the hearing, the vocational expert was asked to consider the work which would be available to a hypothetical individual of the claimant's age, education, and work experience, assuming limitation to light work. He responded that such an individual could perform unskilled light work such as fast food worker (*Dictionary of Occupational Titles* No. 311.472-010), with 2.3 million jobs existing nationally and 41,000 statewide; assembler (*DOT* No. 734.687-018), with 370,000 jobs existing nationally and 7,000 statewide; cafeteria attendant (*DOT* No. 311.677-010), with 420,000 jobs existing nationally and 8,000 statewide; and housekeeping cleaner (*DOT* No. 323.687-014), with 425,000 jobs existing nationally and 8,500 statewide. The vocational expert further testified that such an individual could also perform unskilled sedentary work such as surveillance systems monitor (*DOT* No. 379.367-010), with 50,000 jobs existing nationally and 1,000 statewide; assembler (*DOT* No. 734.687-018), with 60,000 jobs existing nationally and 1,200 statewide; and lens inserter (*DOT* No. 713.687-026), with 59,000 jobs existing nationally and 1,100 statewide.

Based on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.18.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 377, 382, 384-385, 385-386 & 386-387 (emphasis in original)) The Appeals Council affirmed the ALJ's unfavorable decision (Tr. 360-362) and thus, the ALJ's decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a cashier and sewing machine operator, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account

7

evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Although the claimant bears the burden of demonstrating the inability to return to her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). Social Security Ruling 82-61 recognizes three possible tests for determining whether or not a claimant retains the capacity to perform her past relevant work. They are as follows:

> 1. Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., "delivery job," "packaging job," etc.[3]
>
> 2. Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it.
>
> 3. Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.[4]

---

[3] As recognized in the ruling, use of this test is likely to be "fallacious and insupportable" because "[w]hile 'delivery jobs,' 'packaging jobs,' etc., may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge."

[4] The Dictionary of Occupational Titles' descriptions can be relied upon to define the job as it is usually performed in the national economy.

Under § 404.1520(e) of the Commissioner's regulations, a claimant will be found to be "not disabled" when it is determined that she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61.

In this case, the ALJ relied upon test three above to determine that Bryant can perform her past work as a cashier and sewing machine operator. (*See* Tr. 385-386 ("**The claimant is able to perform her past relevant work as a cashier and sewing machine operator** . . . . The claimant has past relevant work as a cashier, cook, store laborer, and sewing machine operator. At the hearing, the vocational expert was asked to classify her past work by skill and exertional level. He responded that the claimant's experience as a cashier represented unskilled light work, that her experience as a cook represented skilled medium work, that her experience as a store laborer represented unskilled medium work, and that her experience as a sewing machine operator represented semi-skilled light work. The vocational expert was then asked to consider the availability of any of the claimant's past work to a hypothetical individual of the claimant's age, education, and work experience, assuming limitation to light work. He responded that such limitations would allow performance of the claimant's past work as a cashier and sewing machine

9

operator but would preclude the other jobs. Accordingly, it is concluded that the claimant is able to perform her past relevant work as a cashier and sewing machine operator."))

Section 404.1520(e) of the Commissioner's regulations requires a review and consideration of a plaintiff's residual functional capacity and the physical and mental demands of the past work before a determination can be made that the plaintiff can perform her past relevant work. Social Security Ruling 82-62 provides that evaluation under § 404.1520(e) "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of . . . her PRW to determine whether the individual can still do that work." *See also Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990) (to support a conclusion that a claimant "is able to return to her past work, the ALJ must consider all the duties of that work and evaluate her ability to perform them in spite of her impairments").

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled."
>
> . . .
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work (or to do other work). Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience.

SSR 82-62. In finding that a claimant has the capacity to perform a past relevant job, the decision of the Commissioner must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation. *Id.*

In this case, the plaintiff's sole contention is that the ALJ erred in failing to follow the opinions of her treating physicians and in relying, instead, upon stale opinions of non-treating physicians. On August 18, 2005, Dr. Fleet completed a physical residual functional capacity questionnaire and thereon indicated that due to plaintiff's lumbar radiculitis, right carpal tunnel syndrome, and right ulnar neuropathy, she would be

11

limited as follow: (1) sitting at one time for 45 minutes and for about 4 hours in an 8-hour workday; (2) standing at one time for 30 minutes and for less than 2 hours during an 8-hour workday; (3) the need to shift from sitting, standing, and walking; (4) the need for 3 unscheduled breaks of 15-30 minutes during an 8-hour workday; (5) the ability to frequently lift and carry less than 10 pounds, occasionally lift and carry 10 pounds, and rarely lift and carry 20 pounds during an 8-hour workday; (6) the ability to rarely twist, stoop and climb stairs and the inability to crouch and climb ladders; (7) significant limitations in repetitive reaching, handling and fingering;[5] and (8) the need to be absent from work more than 4 days per month. (Tr. 201-204)

On October 3, 2008, Dr. William Barnes completed both a PCE and a pain assessment form. (Tr. 598-600) Barnes indicated that plaintiff can sit for 2 hours at a time and a total of 2 hours in an 8-hour workday, can stand and/or walk 2 hours at a time and 2 hours during an 8-hour workday, can lift and carry objects weighing up to 20 pounds for one hour each during an 8-hour workday, can use the arms and hands for repetitive actions like grasping but not for the pushing and pulling of arm controls or fine manipulation, can never climb, and can only bend, squat, crawl and reach for up to one

---

[5] Fleet indicated that with the right hand plaintiff can grasp and turn objects 5% of the time; can perform fine manipulations with the fingers of her right hand 5% of the time; and can use her right arm for reaching 25% of the time. (Tr. 204) Plaintiff's treating physician also indicated that she can grasp and turn objects 50% of the time with her left hand; can perform fine manipulations with the fingers of her left hand 50% of the time; and can use her left arm for reaching 75% of the time. (*Id.*)

hour in an 8-hour workday. (Tr. 600) According to Barnes, plaintiff experiences pain which is distracting to the adequate performance of daily activities and work; activities, such as walking, standing, etc., increases her pain and causes distraction from task or total abandonment of task; and her pain and drug side effects are such as to limit effectiveness due to distraction, inattention, drowsiness, etc. (Tr. 598-599).

It is clear in this circuit that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also Johns v. Bowen*, 821 F.2d 551, 554 (11th Cir. 1987) (same).

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Lewis, supra,* 125 F.3d at 1440 (internal citations omitted); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.").

The ALJ accorded little weight to the opinions of Drs. Fleet and Barnes. (Tr. 384-385)

I give little weight to the conclusions of Dr. Fleet (Exhibit 9F). The stated limitations are not supported by his own treatment notes, which reference only minor findings (Exhibit 8F). In his deposition testimony, he acknowledged that he was not aware that claimant had seen several other doctors who had released her from care without limitations (Exhibit 12F). He testified that it was possible to have spinal pathology which could be symptomatic without being evident on radiology studies. He further acknowledged that his positive clinical findings could have been subjective, but testified that "you don't really see too many people complain of that type pain" without having a problem. I find that this supposition does not account for the possible motive of secondary gain, especially in light of the claimant's pursuit of worker's compensation and disability benefits, and that it is a poor basis for determining permanent work-related limitations. Interestingly, at the deposition, Dr. Fleet characterized his questionnaire responses as recommendations for limiting activity in order to avoid further symptoms. He specifically declined to characterize the limitations as a maximum residual functional capacity assessment, and stated that a determination about what kind of work the claimant could perform would require re-evaluation and a functional capacity evaluation. I therefore conclude that the limitations set forth in Dr. Fleet's residual functional capacity questionnaire are of dubious value and are unpersuasive.

I also give little weight to the conclusions of Dr. Barnes (Exhibit 25F). The claimant appears to have seen Dr. Barnes initially for the express purpose of getting disability forms completed (Exhibit 27F). He stated that her medical records suggested that any disability was "minimal," and he declined to complete the forms. The claimant returned for a second visit, and Dr. Barnes noted at that time that there were some degenerative changes on the new MRI scan. However, he apparently considered her spinal pathology to be minor, stating that its relation to the claimant's symptoms was "debatable." Indeed, the radiologist described the

> degenerative changes as "very mild" (Exhibit 26F). It is unclear why Dr. Barnes then proceeded to complete the clinical assessment of pain and physical capacities evaluation; possibly he felt that a treatment relationship now existed and that he could appropriately assist the claimant in this manner. Again, however, he did not report any objective clinical findings. Given the absence of any positive clinical findings and the minor nature of the abnormalities on the MRI scan, Dr. Barnes presumably based his form responses on the claimant's self-reported limitations. I therefore conclude that his responses are unsupported by the objective evidence and are not persuasive.

(*Id.*) Through this analysis, the ALJ articulated explicit and adequate reasons for giving less weight to the opinions of Drs. Fleet and Barnes. In particular, as pointed out by the ALJ, neither opinion is substantiated by any clinical or laboratory findings and these opinions are contradicted by the remaining evidence of record which supports the ALJ's determination that plaintiff can perform the requirements of light work and, more specifically, her past relevant work as a cashier and sewing machine operator. Accordingly, the undersigned discerns no error in the ALJ rejecting the opinions of Drs. Fleet and Barnes in favor of those of the remaining physicians of record who examined plaintiff.[6]

---

[6] The undersigned cannot agree with plaintiff that the ALJ erroneously relied upon "stale" opinions of non-treating physicians inasmuch as almost all of the evidence/opinions from these very physicians was generated after plaintiff's alleged onset date of disability of March 16, 2004 (*compare* Tr. 377 (identifying March 16, 2004 as the alleged onset date) *with* Tr. 134-135 (Dr. Robert White's April 29, 2004 examination of plaintiff), Tr. 144-146 (Dr. Harry Luscher's treatment notes on plaintiff dated April 13, 2004 through January 4, 2005), Tr. 147-154 (Dr.
(Continued)

Because plaintiff raises no other assignments of error and substantial evidence of record supports the ALJ's fourth-step determination that plaintiff can perform the requirements of past relevant work as a cashier and sewing machine operator (*compare* Tr. 385-386 *with* Tr. 134-170, 230, 243-298, 523-526, 556, 566-571 & 605), the Court finds that the Commissioner's decision denying plaintiff benefits is due to be affirmed. *See, e.g., Waldrop v. Commissioner of Social Security*, 379 Fed.Appx. 948, 953 (11th Cir. 2010) ("The burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy.").

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying

---

Edward Schnitzer's treatment notes from April 29, 2004 through January 17, 2005), Tr. 155-170 (plaintiff's treatment by Drs. Sage Smith and Angela Powell from July 25, 2003 through August 17, 2005), and Tr. 243-245 (Dr. M.E. Davis' treatment records from June 8, 2004 through September 12, 2005)) and are relevant to the disability determination decision, *see Schiano v. Astrue*, 2009 WL 1770152, *4 (S.D. Fla. June 23, 2009) ("The transcript in this matter contains medical records of Claimant dating back to 1997. Claimant's alleged date of disability onset did not occur until March 15, 2004. Therefore, although the Court will review records from prior to this date in order to place the later medical records in context, the Court will focus primarily on records from March 15, 2004, forward."); *Homrighouse v. Astrue*, 2009 WL 3053705, *3 (M.D. Fla. Sept. 18, 2009) ("Medical evidence for the relevant time period-including treatment notes generated during the months just before Plaintiff's alleged onset of disability date and just after her date last insured . . . is limited . . . .").

plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 18th day of March, 2011.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**